UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ANDREA B.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-03296-MJD-JMS |
| | ) | |
| KILOLO KIJAKAZI,[2] | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY ON JUDICIAL REVIEW**

Claimant Andrea B. requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her Social Security application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 423(d) ("the Act"). For the reasons set forth below, the Court **REVERSES** and **REMANDS** the decision of the Commissioner.

**I. Background**

Claimant applied for DIB on May 16, 2018, alleging an onset of disability as of March 31, 2017. [Dkt. 12-2 at 16.] Claimant's application was initially denied on October 5, 2018, and again upon reconsideration on February 12, 2019. [Dkt. 12-2 at 16.] On March 13, 2020, a hearing was held before Administrative Law Judge Livia Morales ("ALJ"). [Dkt. 12-2 at 32.]

---

[1] In an attempt to protect the privacy interest of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), after the removal of Andrew M. Saul from his office as Commissioner of the SSA on July 9, 2021, Kilolo Kijakazi automatically became the Defendant in this case when she was named as the Acting Commissioner of the SSA.

1

ALJ Morales issued her determination that Claimant was not disabled on April 28, 2020. [Dkt. 12-2 at 13.] The Appeals Council then denied Claimant's request for review on October 30, 2020. [Dkt. 12-2 at 2.] Claimant timely filed her Complaint on December 29, 2020, seeking judicial review of the ALJ's decision. [Dkt. 1.]

## II.  Legal Standards

To be eligible for benefits, a claimant must have a disability pursuant to 42 U.S.C. § 423. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis: (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits her ability to perform basic work activities, she is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three, and is able to perform her past relevant work, she is not disabled; and (5) if the claimant is not found to be disabled at step three, cannot perform her past relevant work, but can perform certain other available work, she is not disabled. 20 C.F.R. § 404.1520. Before continuing to step four, the ALJ must assess the claimant's residual functional capacity ("RFC") by "incorporat[ing] all of the claimant's limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019).

In reviewing a claimant's appeal, the Court will reverse only "if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). An ALJ need not address every piece of evidence but must provide a "logical bridge" between the evidence and her conclusions. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). Thus, an ALJ's decision "will be upheld if supported by substantial evidence," which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). This Court may not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Where substantial evidence supports the ALJ's disability determination, the Court must affirm the decision even if "reasonable minds could differ" on whether the claimant is disabled. *Id.*

### III.  ALJ Decision

The ALJ first determined that Claimant had not engaged in substantial gainful activity since the alleged onset date of March 31, 2017. [Dkt. 12-2 at 18.] At step two, the ALJ found that Claimant had the following severe impairments: "lumbar spine disorder, status-post lumbar fusion; bilateral knee osteoarthritis; status-post right knee arthroplasty and total right knee replacement; status-post left total knee replacement; arthritic changes to the feet status-post left foot surgery and right foot fracture; and arthritic changes to the hands and wrists (20 CFR 404.1520(c))." [Dkt. 12-2 at 19.] At step three, the ALJ found that Claimant's impairments did not meet or medically equal a listed impairment during the relevant time period. [Dkt. 12-2 at 21.] The ALJ then found that, during the relevant time period, Claimant had the residual functional capacity ("RFC")

> to perform sedentary work as defined in 20 CFR 404.1567(a) except she can handle and finger frequently with the bilateral upper extremities; occasionally climb ramps

and stairs; never climb ladders, ropes, or scaffolds; occasionally balance; occasionally stoop; occasionally kneel; occasionally crouch; occasionally crawl; and frequently operate foot controls. Any time off task can be accommodated by up to 10 percent of a workday, or six minutes an hour, in addition to normal breaks.

[Dkt. 12-2 at 22.]

At step four, the ALJ found that Claimant was "capable of performing past relevant work as bill collector and procurement clerk" because such "work does not require the performance of work-related activities precluded by the claimant's residual functional capacity." [Dkt. 12-2 at 26.] Accordingly, the ALJ concluded that Claimant was not disabled. [Dkt. 12-2 at 27.]

### IV. Discussion

Claimant advances two arguments in support of her request to reverse ALJ Morales' decision. First, Claimant argues that the ALJ failed to support her RFC with evidence from the record. [Dkt. 14 at 20.] Second, Claimant asserts that the ALJ misapplied Social Security Ruling ("SSR") 16-3p in assessing Claimant's subjective symptoms. [Dkt. 14 at 30.] The Court will now address both arguments in turn.

#### A. RFC Issue

Claimant initially argues that ALJ Morales erred by failing to articulate the rationale behind her RFC determination, particularly with respect to Claimant's alleged leg elevation, hand usage, and off-task limitations. [Dkt. 14 at 20.] In response, the Commissioner argues that the ALJ's RFC was supported by substantial evidence. [Dkt. 15 at 5.] For the reasons set forth below, the Court finds that ALJ Morales erred by failing to address all of the limitations for which there was support in the record.

1. Leg Elevation Limitation

First, Claimant argues that, despite evidentiary support in Claimant's favor, the ALJ failed to account for Claimant's need to elevate her legs. [Dkt. 14 at 24.] At her hearing,

4

Claimant testified that, due to several knee surgeries and issues with her prosthetic knee, she is unable to sit for long periods of time and that her "legs need to be elevated." [Dkt. 12-2 at 44.] Even with her legs elevated, Claimant can typically only sit "for about an hour." [Dkt. 12-2 at 44.] If her legs are not elevated while sitting, Claimant testified that the pain is "bone-on-bone" and "feels like a knife is jamming in [her] knee." [Dkt. 12-2 at 44-48.] Alleviating the pain requires her to "reacclimate" by walking for "about 20 minutes," [Dkt. 12-2 at 45], although walking also exacerbates the pain and "creates a lot of swelling," [Dkt. 12-6 at 41]. At home, Claimant is able to avoid some of this pain by regularly using her recliner chair to keep her legs sufficiently elevated. [Dkt. 12-2 at 44.] Claimant's 2018 function report is consistent with this testimony. [Dkt. 12-6 at 41.] Additionally, in his RFC Questionnaire, Claimant's treating physician, Dr. Daniel Fisher, reported that Claimant can only sit for one hour at a time and that must be done "with elevation." [Dkt. 12-8 at 180.] Dr. Fisher further reported that, with prolonged sitting, Claimant's legs must be elevated 90 degrees and that, if she had a sedentary job, Claimant's legs would need to be elevated for 75% of an eight-hour workday. [Dkt. 12-8 at 181.] At Claimant's hearing, the VE testified that this necessary leg elevation would preclude any work, as it would require an accommodation by the employer. [Dkt. 12-2 at 57.]

  While the ALJ acknowledged the aforementioned evidence in her summary, she did not mention Claimant's leg-elevation limitation or include any limitations with regard to the amount of time Claimant could sit in her RFC determination. *See* [Dkt. 12-2 at 22-23]. And although the ALJ went on to briefly summarize Claimant's medical history, she ultimately failed to explain why Claimant's leg elevation limitation was not reflected in her RFC. *See Michael v. Saul*, 2021 WL 1811736, at *8 (N.D. Ind. May 6, 2021) ("A summary is not an analysis, as it does not explain **why** the evidence summarized undermined [Claimant's] statements about [her]

symptoms or limitations, or which statements were inconsistent") (emphasis in original) (citing *Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008)). ALJ Morales was required to confront the evidence in support of Claimant's knee-related limitations and articulate why it was not accepted. The failure to do so is reversible error.

    2. <u>Hand-Usage Limitation</u>

Second, Claimant asserts that ALJ Morales failed to "adequately explain the rationale behind her finding of the RFC" regarding "the limitation that [Claimant] would still be able to utilize her bilateral hands for frequent fingering and handling despite moderate to severe degenerative changes in her bilateral hands." [Dkt. 14 at 28.] At the hearing, Claimant testified that the arthritis in her hands caused soreness and inflammation that was not fully alleviated with medication. [Dkt. 12-2 at 50.] She stated that she could only use her hands repetitively for about "ten minutes" at a time. [Dkt. 12-2 at 51.] Claimant points to evidence in the record that supports this limitation. [Dkt. 12-8 at 4, 140.] Additionally, Dr. Fisher reported in his RFC Questionnaire that Claimant had "significant limitations with reaching, handling, or fingering," and that, during an eight-hour workday, Claimant was only able to grasp, turn, or twist objects 50% of the day with her right hand and 40% of the day with her left hand. [Dkt. 12-8 at 182.] At Claimant's hearing, the VE testified that a claimant who was only able to handle and finger objects occasionally would be unable to perform the past relevant work and any other work. [Dkt. 12-2 at 57.]

Despite this, the ALJ determined that Claimant could "handle and finger frequently with the bilateral upper extremities," [Dkt. 12-2 at 22], and thus Claimant could perform her past relevant work, [Dkt. 12-2 at 26]. This is especially concerning since, within her RFC analysis section, the ALJ highlighted Claimant's testimony that, "[b]ecause of her hand symptoms, she

6

can only perform repetitive actions, such as stirring, for 10 minute periods." [Dkt. 12-2 at 23.] It is unclear why the aforementioned evidence was rejected because ALJ Morales failed to articulate what led to her conclusion that Claimant could utilize her hands to handle and finger frequently. *See Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) (remanding where the ALJ "did not identify any medical evidence to substantiate her" assessment of the claimant's physical impairments and stating that an ALJ must "explain how she reached her conclusions about [the claimant's] physical capabilities"). Ultimately, there is no "logical bridge" between the evidence regarding Claimant's limited ability to use her hands and the ALJ's conclusion that Claimant could handle and finger frequently. *Varga*, 794 F.3d at 813. This, too, is reversible error.

    3.  <u>Off-Task Limitation</u>

Finally, Claimant argues that the ALJ failed to articulate the rationale behind her RFC determination that "any time off task can be accommodated by up to ten percent of a workday, or six minutes in an hour, in addition to normal breaks." [Dkt. 14 at 21; *see* Dkt. 12-2 at 22.] Since 2017, Claimant has engaged in part-time work at Kroger. [Dkt. 12-2 at 40.] She works in the "click list" department, fulfilling orders placed online that will be picked up later in-person. [Dkt. 12-2 at 38-39.] At the hearing, Claimant testified about her struggles while working part-time and underscored how accommodating Kroger has been. [Dkt. 12-2 at 48.] She explained that she has "the highest time"[3] of her co-workers, but Kroger "work[s] with [her] very well." [Dkt. 12-2 at 48.] For example, Claimant only works four-to-five-hour shifts four days a week and is "allowed to take more breaks," so she "take[s] one every hour and sit[s] for 15 minutes" but is

---

[3] Claimant's testimony about having "the highest time" refers to the time it takes her to fulfil online orders as compared to her co-workers. [Dkt. 12-2 at 48.] Claimant testified that the best times are "usually at 29" (presumably, this means 29 minutes), but her personal times are "usually between 56 and 61." [Dkt. 12-2 at 48.] Claimant stated, "I try to get lower . . . and I just can't do it. I've tried." [Dkt. 12-2 at 48.]

allowed to sit for longer if she needs to. [Dkt. 12-2 at 39, 48.] When working, Claimant doesn't need to lift anything heavier than "a gallon of milk or a 12-pack of pop," because other employees will do any heavy lifting for her. [Dkt. 12-2 at 40.] Kroger also lets Claimant call out of work or go home early if her pain is too unbearable that day. [Dkt. 12-2 at 49.] Dr. Fisher confirmed these work-related limitations and reported that Claimant would likely be absent from work for more than four days per month due to her impairments. [Dkt. 12-8 at 182.] At the hearing, the VE testified that an individual who required 15-minute breaks from work each hour could not perform any work. [Dkt. 12-2 at 56.] The VE further testified that the maximum time off-task permitted by employers is six minutes per hour and that the absentee threshold is once per month. [Dkt. 12-2 at 57.]

      Despite this, ALJ Morales determined that "any time off task can be accommodated by up to ten percent of a workday, or six minutes in an hour, in addition to normal breaks." [Dkt. 12-2 at 22.] The Court agrees with Claimant that this finding "is unexplained and unsupported in the record," and "appears to be arbitrary." [Dkt. 14 at 23.] This situation is similar to that in *Harris v. Saul*, 2020 WL 221964 (E.D. Wis. Jan. 15, 2020), in which the court noted that "the ALJ apparently chose the ten percent figure because that is where most vocational experts will draw the line between the acceptable and unacceptable, **not because it was supported by substantial evidence**." *Id.* at *3 (internal citation omitted) (emphasis added). At bottom, the ALJ again erred by failing to articulate the reasoning behind her off-task determination and thus the requisite "logical bridge" is missing. *Varga*, 794 F.3d at 813; *see Lanigan v. Berryhill*, 865 F.3d

558, 563-64 (7th Cir. 2017) (remanding where the ALJ failed to explain the basis for a ten percent off-task limitation).[4]

### B. Subjective Symptoms Issue

Claimant additionally argues that the ALJ erroneously applied SSR 16-3p in assessing her subjective symptoms. [Dkt. 14 at 30.] Specifically, Claimant states that ALJ Morales again failed to articulate why she found that "the allegations with respect to the intensity, frequency, and limiting effects of [Claimant's] symptoms are not entirely consistent with the medical evidence" [Dkt. 12-2 at 23], and, further, improperly drew conclusions based on the fact that Claimant works at Kroger part-time. [Dkt. 14 at 30-21.] In response, the Commissioner asserts that the ALJ reasonably evaluated Claimant's symptoms. [Dkt. 15 at 11.] For the reasons set forth below, the Court finds that ALJ Morales erred by mischaracterizing Claimant's testimony and improperly considering Claimant's symptoms with regard to her daily living activities.

Pursuant to SSR 16-3p, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms." SSR 16-3p, 2017 WL 5180304, at *3. Once established, the ALJ must

---

[4] In addition to the issues raised by Claimant, it is worth noting that the ALJ did not satisfy her obligation to account for Claimant's non-severe impairments in her RFC determination. After finding that Claimant's non-severe "medically determinable impairments of anxiety, depression, alcohol abuse disorder, and insomnia" caused "mild" limitations in "understanding, remembering, or applying information," "concentrating, persisting, or maintaining pace," and "adapting or managing oneself," [Dkt. 12-2 at 20-21], ALJ Morales did not mention these limitations whatsoever in explaining her RFC assessment and did not pose any hypotheticals to the VE that included these limitations. The ALJ should take care to do so on remand. *See Jeremy L. J. v. Saul*, 2020 WL 1033795, at *5 (S.D. Ind. Feb. 14, 2020) ("when a claimant has at least one severe impairment . . ., [she] is entitled to have the ALJ evaluate whether the combination of [her] non-severe and severe impairments impose any functional limitations") (referencing *Bowen v. Yuckert*, 482 U.S. 137, 150-51 (1987)); *see also Alesia v. Astrue*, 789 F. Supp. 2d 921, 933-34 (N.D. Ill. 2011) (finding reversible error where the ALJ "did not include any mental functioning restrictions in the RFC finding," and thus the claimant's "mental functioning limitations could not be taken into account in the step-four finding").

"evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.* SSR 16-3p, which rescinded SSR 96-7p on March 28, 2016, requires that the ALJ assess a claimant's subjective symptoms, but not her credibility. *Id.* at *2. The "change in wording is meant to clarify that [ALJ's] aren't in the business of impeaching claimants' character; obviously [ALJ's] will continue to assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original); *see also Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015) (noting that an ALJ erred in "her belief that complaints of pain, to be credible, must be confirmed by diagnostic tests"). At stage two of the SSR 16-3p analysis, the ALJ considers the Claimant's alleged symptoms in light of the claimant's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; treatment other than medication for relief of pain; and other measures taken to relieve pain. 20 C.F.R. § 404.1529(c)(3).

>Here, ALJ Morales stated as follows:
>
>Concerning SSR 16-3p, I find the record shows some degree of limitation, but not to the extent alleged. As mentioned above, the claimant reported significant symptoms resulting on [sic] limitations on activities of daily living. Nonetheless, the claimant testified to ongoing part-time work at Kroger. Additionally, she stated that she retained the ability to drive, shop in stores, prepare simple meals, occasionally walk her dogs, and occasionally perform household chores.

[Dkt. 12-2 at 24.] This passage is flawed, as the Seventh Circuit has cautioned that a claimant's "brief, part-time employment" does not "support[] a conclusion that she was able to work a full-time job, week in and week out, given her limitations." *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011) (referencing *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009); *Diaz v. Prudential Ins. Co. of Am.*, 499 F.3d 640, 648 (7th Cir. 2007); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th

10

Cir. 2001)). Claimant testified that Kroger permits her to take extra breaks, work shorter hours, call out sick if she is in too much pain, and otherwise is exceedingly accommodating. [Dkt. 12-2 at 38-40, 48-50.] When presented with hypotheticals based on Kroger's accommodations, the VE testified that a claimant who required such accommodations would be precluded from any work as defined by the Act. For example, Claimant testified that Kroger allows her to take a 15-minute break every hour. [Dkt. 12-2 at 39.] When the ALJ asked the VE whether an individual who needed to take a break every hour for 15 minutes would be able to perform past relevant work or any other work, the VE responded, "No, ma'am." [Dkt. 12-2 at 56.] Importantly, the Seventh Circuit has noted that, due to a "lenient or altruistic employer," a claimant may work without being capable of substantial gainful employment. *Garcia v. Colvin*, 741 F.3d 758, 760 (7th Cir. 2013). That is clearly the case here.

      The ALJ also ignored the fact that Claimant's daily activities are performed with significant limitations. *See Stark v. Colvin*, 813 F.3d 684, 688 (7th Cir. 2016) (discussing how a claimant's persistence in struggling through daily activities "does not mean . . . that she can manage the requirements of the work-place"). Indeed, "there are critical differences between keeping up with activities of daily living and holding down a full-time job." *Reinaas v. Saul*, 953 F.3d 461, 467 (7th Cir. 2020) (citing *Beardsley v. Colvin,* 758 F.3d 834, 838 (7th Cir. 2014); *Bjornson v. Astrue,* 671 F.3d 640, 647 (7th Cir. 2012)). Here, ALJ Morales asserted that Claimant "retained the ability to drive, shop in stores, prepare simple meals, occasionally walk her dogs, and occasionally perform household chores." [Dkt. 12-2 at 24.] This statement, however, mischaracterizes Claimant's testimony. In reality, Claimant's testimony suggests that she performed her daily living activities with significant limitations and with regular assistance from her husband. For example, Claimant testified that she is able to walk her chihuahuas "when

11

the weather is good enough and [she's] feeling good enough." [Dkt. 12-2 at 37.] In fact, Claimant had only walked her dogs two times in the three months prior to the hearing. [Dkt. 12-2 at 38.] Further, her husband does most of the chores at home. [Dkt. 12-2 at 51.] Claimant testified that, on good days, the only chore she is able to attempt is vacuuming and, in any case, there are only two rooms in her house which require vacuuming. [Dkt. 12-2 at 52.] There is no testimony concerning Claimant's ability to shop in stores, other than Claimant's part-time work at Kroger, and the ALJ does not include a citation indicating where she gleaned this information. Additionally, the way in which Claimant's daily living is substantially limited by her impairments is perhaps best displayed by her testimony that, since 2012, her inability to climb stairs has precluded Claimant from using the entire second story of her house: "we don't use the upstairs, I had to change my dining room into a bedroom." [Dkt. 12-2 at 36-37.] While ALJ Morales may have disbelieved Claimant's testimony regarding her daily activities, she failed to explain why, which she was required to do. Instead, she impermissibly mischaracterized Claimant's testimony regarding her daily living activities and used that mischaracterization to support her own conclusion.

>Concerning SSR 16-3p, the ALJ continued as follows:
>
>Additionally, physical examination findings above showed intact cranial nerves, normal strength, grossly intact motors findings, no focal deficits, a stable gait, intact sensation, no tenderness to palpation, full range of motion, intact deep tendon reflexes, and no joint swelling, gross muscle atrophy, weakness, spinal deviation, or gross instability.

[Dkt. 12-2 at 24.] This assessment of Claimant's physical examinations does not reveal the entire story, however. In fact, on the preceding page of her decision, ALJ Morales recognized that "examining providers also noted occasions where the claimant exhibited swelling, effusion, positive valgus tests, decreased range of motion, significant deformity of the right wrist

secondary to previous injury, and tenderness to palpation." [Dkt. 12-2 at 23.] It therefore appears that the ALJ has cherry-picked evidence without fully confronting the entire record. Further, as already noted, merely summarizing Claimant's medical record does not constitute proper analysis. *See Michael*, 2021 WL 1811736, at *8 (citing *Craft*, 539 F.3d at 677-78).

In sum, ALJ Morales' decision must be reversed because she has failed to articulate the requisite "logical bridge" between the evidence and her conclusions. *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996). The ALJ also improperly considered Claimant's symptoms with respect to her daily activities and mischaracterized Claimant's testimony to fit the narrative the ALJ desired. On remand, the ALJ must not equate Claimant's part-time employment with significant accommodations with the capacity for full-time work, *Jelinek*, 662 F.3d at 812, and must not ignore Claimant's testimony regarding the limitations on her ability to accomplish daily living activities, *Stark*, 813 F.3d at 688.

### V.  Conclusion

For the reasons stated above, the Commissioner's decision is **REVERSED** and **REMANDED for further proceedings consistent with this Order**.

SO ORDERED.

Dated:  8 DEC 2021

                                            Mark J. Dinsmore
                                            United States Magistrate Judge
                                            Southern District of Indiana

Distribution:

Service will be made electronically
on all ECF-registered counsel of record via
email generated by the Court's ECF system.